IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

INTERNATIONAL CAFÉ, S.A.L.,
A Lebanon corporation,

        Plaintiff,

v.

HARD ROCK CAFÉ INTERNATIONAL
(U.S.A.), INC., a Florida corporation,
HRC CANADA, INC.,
an Ontario corporation, and
RANK CANADA, INC., an Ontario
corporation

        Defendants.
_____/

CASE NO. 99-1065 Civ-Orl-19C
Judge Patricia C. Fawsett

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO STAY

Plaintiff, INTERNATIONAL CAFÉ, SAL ("IC"), by and through undersigned counsel, hereby files its Memorandum of Law in Opposition to Defendants, HARD ROCK CAFÉ INTERNATIONAL (USA), INC. ("HRC"), and HRC CANADA, INC.'s. ("HRCC") Motion to Dismiss, or in the alternative Motion to Stay, and states as follows:

### I. INTRODUCTION

In response to Plaintiff's Complaint, HRC and HRCC have filed two separate twenty (20) page motions which, in reality, are nothing more than a single motion to dismiss, or in the alternative, a motion to stay. Defendants have chosen to split these motions in order to circumvent this Court's strict twenty (20) page limit on all legal memoranda. See M.D. Local Rule 3.01(c).[1] Defendants' Motion to Stay should be denied on this procedural basis.

---

[1] "This Court's Local Rules are not mere suggestions, they are the laws of the United States with which [**Defendants**] must comply." Marshall v. Gates, 44 F.2d 722, 724 (9th

HRC and HRCC's Motion to Dismiss is premised on an alleged failure to join what Defendants view as an indispensable party, and a purported failure to establish subject matter jurisdiction. As demonstrated below, the party Defendants claim to be indispensable (Hard Rock Limited) is not a necessary party. The claims of unfair competition here are directed exclusively at HRC. Moreover, this lawsuit is grounded upon an entirely different theory of liability as opposed to the earlier action brought by IC. Likewise, subject matter jurisdiction in this case is easily established, since Plaintiff's claims arise under the laws of the United States; specifically, the Lanham Act, and a treaty to which both the United States and Lebanon are signatories, the Paris Convention. Accordingly, subject matter jurisdiction exists because the claims asserted by Plaintiff require this Court to decide a federal question. Defendants' Motion to Dismiss on these grounds should also be denied.

Defendants' alternative Motion to Stay should also be denied. Defendants' argue, albeit erroneously, that this action should be stayed pending resolution of "three very similar actions currently pending in Lebanon." As demonstrated below, the actions pending in Lebanon do not involve the same parties, nor have Defendants demonstrated the requisite similarity between this actions and the various proceedings in Lebanon. Moreover, other factors governing the application of the international abstention doctrine weigh against staying this action. Accordingly, this Court should deny Defendants' alternative Motion to Stay.

---

Cir. 1995).

2

**II.    ARGUMENT**

    **A.**    <u>Defendants' Motion to Dismiss Should be Denied</u>

        **1.**    <u>Standard of Review</u>

On a motion to dismiss, the court must consider all allegations contained in Plaintiff's Complaint as true and all allegations should be viewed in a light most favorable to Plaintiff, as the non-moving party. See <u>CSX Transp., Inc. v. City of Pensacola, Fla.</u>, 887 F.Supp. 275, 277 (N.D. Fla. 1995); <u>Zombori v. Digital Equipment Corp.</u>, 878 F.Supp. 207, 208 (N.D. Fla. 1995). In short, the Complaint must not be dismissed unless it is clear, beyond a doubt, that Plaintiff cannot prove any facts which entitle it to relief. See <u>Ellsworth v. City of Racine</u>, 774 F.2d 182, 184 (7th Cir. 1985); <u>Mann v. Air Line Pilots Ass'n</u>, 848 F.Supp. 990, 991 (S.D. Fla. 1994). That is certainly not the situation in this case.

        **2.**    <u>Hard Rock Limited Is Neither a Necessary Nor An Indispensable Party to this Action</u>

Prior to December 19, 1996, Hard Rock Café Ltd. (Canada) issued Hard Rock Café franchises to individuals and corporations throughout the World, except the United States. Complaint at ¶10. During this same time period, HRC (or its predecessor) also issued Hard Rock Café franchises throughout the World, except in Canada. <u>Id.</u> at ¶9. On or about December 19, 1996, Hard Rock Café Ltd. (Canada) and HRC settled pending litigation over the use of the Hard Rock Café name, and HRC agreed to purchase all of Hard Rock Café Ltd. (Canada)'s worldwide assets, rights and obligations concerning the Hard Rock Café name. Complaint at ¶10. Before this settlement, however, Hard Rock Café Ltd. (Canada) entered into a twenty (20) year agreement with Plaintiff on June 11, 1996, for the exclusive use of the Hard Rock Café name in

Lebanon. Complaint at Exhibit F.[2]

Prior to filing the earlier lawsuit styled: <u>International Café, SAL v. Hard Rock Café International (USA), Inc., Hard Rock Café International, Inc., Hard Rock Café Canada, Inc., and Hard Rock Limited</u>, Case No. 98-364-CIV-ORL-22C (hereinafter the "Prior Action"), Plaintiff was neither aware of the details concerning the purchase of Hard Rock Café Ltd. (Canada)'s assets and obligations, nor who became the successor to those assets and obligations. Plaintiff sued HRL in the Prior Action believing that HRL was one of the successors to Hard Rock Café Ltd. (Canada). During discovery in the Prior Action, Plaintiff learned that the successor in interest to Hard Rock Café Ltd. (Canada) was Defendant, HRCC – not HRL – and sought to voluntarily dismiss HRL. Defendants objected to dismissal of HRL, because a number of allegations in the Prior Action mistakenly referred to HRL as the responsible party. By Order dated November 17, 1998, this Court dismissed the Prior Action without prejudice for lack of subject matter jurisdiction. Since both Plaintiff, IC, and two Defendants were foreign corporations, complete diversity could not be established. This Court also found HRL to be an indispensable party specifically within the context of the claims raised in the Prior Action, which alleged HRL to be a responsible party.

Unlike the Prior Action, this lawsuit does not rely upon diversity of citizenship to establish subject matter jurisdiction. Nor does this lawsuit allege any wrongdoing by HRL. Rather, this lawsuit alleges that only Defendant, HRC has engaged and is engaging in unfair competition against Plaintiff in Lebanon. Complaint at ¶¶34-40. In the Complaint, Plaintiff alleges that "HRC

---

[2] Hard Rock Café Ltd. (Canada) is not to be confused with Hard Rock Limited ("HRL"), which Defendants erroneously claim is an indispensable party to this lawsuit.

4

is a world-wide licensor of Hard Rock Café restaurants, and through its President, Mr. James Berk, claims to control the Hard Rock Café brand globally." Complaint at ¶6. Defendants attempt to undermine this allegation by attaching several sworn declarations to their motion to dismiss. However, on a motion to dismiss, all allegations in the Complaint must be accepted as true. See CSX Transp., Inc., 887 F.Supp. at 277. Consequently, none of the sworn testimony submitted by Defendants to contradict this allegation in the Complaint should be considered by this Court in ruling on the instant Motion to Dismiss. Accepting the allegations of the Complaint as true, as they should be on a motion to dismiss, HRL is not a necessary or indispensable party to this action.

In Challenge Homes, Inc. v. Greater Naples Care Center, the Eleventh Circuit reversed a dismissal for failure to join an indispensable party where none of parties would be prejudiced if the litigation proceeded without joinder of the alleged indispensable party. 669 F.2d 667, 670-71 (11th Cir. 1982). The Court indicated that the excluded party would have an opportunity to defend his participation in any wrongdoing if either party chose to sue him at some future time. Id. at 670. The Court also reasoned that the defendant could protect itself by impleading the excluded party. Id. at 671. Since liability in this lawsuit is premised upon acts committed by HRC, not HRL, neither Plaintiff nor Defendants will be prejudiced by HRL's absence. Complaint at ¶¶34-40. Not unlike the reasoning advanced by the Eleventh Circuit in Challenge Homes, HRC could also avoid any prejudice in this lawsuit by impleading HRL pursuant to Rule 14, Fed. R. Civ. P. Furthermore, joinder of a subsidiary (like HRL here) is not necessary where liability is premised upon the acts of the parent corporation. See Heinrich v. Goodyear Tire and Rubber Co., 532 F.Supp. 1348, 1359 (D.Md. 1982).

ZARCO & PARDO, P.A. ATTORNEYS AT LAW, INTERNATIONAL PLACE, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418

The concept of collateral estoppel does not require a different conclusion. Defendants cannot establish at least two of the four prerequisites for the application of collateral estoppel to this issue. Specifically, based upon the differences between the Prior Action and the instant lawsuit, Defendants cannot establish that issue at stake is "identical," to that previously decided, or that the same issue was actually litigated. The principal grounds for this lawsuit – i.e., unfair competition – differ markedly from those of the Prior Action; breach of contract. For this same reason, Defendants cannot demonstrate that the same issue was actually litigated.

Likewise, it cannot be demonstrated that the issue at stake is "identical," to the one resolved in the Prior Action. This Court's previous determination that HRL was a necessary party to the Prior Action does not blindly establish that HRL is an indispensable party to this lawsuit. The claim for unfair competition in this case is asserted exclusively against HRC by virtue of its President's public statement that HRC purportedly controls the "Hard Rock Café" name globally. In sharp contrast to the Prior Action, there are no allegations in this lawsuit against HRL. If, in fact, the statement made by HRC's President is true, there would be no need to involve HRL in this lawsuit in order for Plaintiff to obtain complete relief. Indeed, this Court could require HRC to remove any Hard Rock Café locations "it controls" within Lebanon.

In view of the foregoing, Defendants' Motion to Dismiss for failure to join an indispensable party must be denied by this Court.

> 3. This District Has Maintained That the Lanham Act and the Paris Convention Provides a Basis for Relief in Federal Court For Claims of <u>Unfair Competition Even to Foreign Litigants</u>

It is undisputed that the Lanham Act incorporates the provisions governing unfair competition contained in the Paris Convention, to which both the United States and Lebanon are

6

signatories. Defendants' Motion to Dismiss at p. 9. The issue presented by Defendants' Motion to Dismiss for lack of subject matter jurisdiction is, quite simply, as follows: Can a foreign Plaintiff state a federal cause of action for unfair competition against a Florida corporation in federal court, for acts that may have occurred, at least in part, outside the United States? This question has already been answered within this Circuit in the affirmative. See Davidoff Extension, S.A. v. Davidoff International, Inc., 221 U.S.P.Q. 465, 1983 WL 203, *3-4 (S.D. Fla.); Laboratorios Roldan, C. Por A. v. Tex International, Inc., 902 F.Supp 1555, 1668-69 (S.D. Fla. 1995); Benard Industries, Inc. v. Bayer Aktiengesellschaft, 38 U.S.P.Q.2d 1422, 1426, 1996 WL 218617, *5-6 (S.D. Fla.). As Defendants candidly admit, Courts **outside** this District are divided on this issue. Defendants' Motion to Dismiss at p. 9. Defendants fail to so candidly acknowledge, however, that claims identical to those asserted by Plaintiff herein have survived a motion to dismiss within this Circuit. Benard Industries, 1996 WL 218617, *5-6 (denying motion to dismiss unfair competition claim premised upon Lanham Act and Paris Convention for acts that occurred in South and Central America).

The definition of "national treatment" offered by Defendants in their moving papers suggests that Plaintiff is only entitled to as much protection from unfair competition as a U.S. citizen would be entitled under domestic U.S. law. Defendants' Motion to Dismiss at p. 9. Defendants erroneously conclude that since Plaintiff's claim for unfair competition seeks application of Lebanese law, there can be no federal cause of action under the Lanham Act or the Paris Convention. Id. at 16. This argument ignores two critical factors about Plaintiff's unfair competition claim. First, Plaintiff is not requesting that this Court make a determination whether there has been trademark infringement under Lebanese law. Indeed, all actions and conduct

which led to the unfair competition between the two Hard Rock Cafes in Lebanon, was actually authorized, condoned and directed by HRC in Orlando, Florida. As alleged in the Complaint, HRC engaged in unfair competition by, *inter alia*:

 a. Authorizing, facilitating, supporting and encouraging its franchisee in Beirut, Lebanon to violate IC's exclusive rights to use the Hard Rock Café name and marks in Lebanon, thereby creating confusion as to the origin of the goods and services provided by IC's Hard Rock Café restaurant/nightclub in Beirut, Lebanon;

 b. Authorizing, facilitating, supporting and encouraging its Beirut franchisee to publicly discredit the legitimacy of the goods and services provided at IC's Hard Rock Café restaurant in Beirut; and

 c. Authorizing, facilitating, supporting and encouraging its Beirut franchisee to mislead the public as to the nature of the goods provided at IC's Hard Rock Café restaurant.

Complaint at ¶38. In Benard Industries, the Southern District held that a foreign corporation could maintain a claim for unfair competition under the Lanham Act and the Paris Convention against a U.S. corporation for distribution of products outside the United States. 1996 WL 218617, * 5-6. In reaching this determination, the Court also indicated that the foreign litigant's allegations of "multiple factual bases for its claim of unfair competition," further justified denial of the motion to dismiss the unfair competition claim in that case. Id. at *6. Like the foreign litigant in the Benard Industries case, Plaintiff has alleged a wide range of acts and conduct to support its claim for unfair competition in the case at bar, which permit its claim for unfair competition to survive Defendants' Motion to Dismiss for lack of subject matter jurisdiction. See Benard Industries, 1996 WL 218617, at *6.

 Secondly, even though the physical competition between the two Hard Rock Cafes

occurred in Lebanon, the Complaint makes clear that benefits were derived in the United States from HRC's unfair competition. Specifically, Plaintiff alleged in the Complaint as follows:

> HRC benefits locally from authorizing, facilitating, supporting and encouraging its Beirut franchisee to engage in the methods of unfair competition described above, since HRC receives franchise fees, royalties and other substantial commissions from the sale of merchandise at the Hard Rock Café operated by HRC's franchisee in Beirut, Lebanon in direct violation of IC's exclusive rights.

Complaint at ¶39. In General Motors Corp. v. Ignacio Lopez de Arriortua, 948 F.Supp. 684 (E.D. Mich. 1996), the court denied a motion to dismiss claim for unfair competition under the Lanham Act and the Paris Convention, and unequivocally held that the Lanham Act applies even where acts of unfair competition take place outside the United States.[3] Id. at 690. The Court further indicated that "Congress has the power to regulate even entirely foreign commerce between the states or between the United States and foreign countries." Id. Indeed, federal statutes, like the Lanham Act, apply if the underlying conduct occurred within the United States or if conduct which occurs abroad has substantial effects within the United States. See Consolidated Gold Fields PLC v. Minorco, S.A., 871 F.2d 252, 261-62 (2nd Cir. 1989). In Steele v. Bulova Watch Co., liability under the Lanham Act against a United States citizen who sold infringing watches only in foreign countries was affirmed, because of the benefits derived in the United States from such unfair competition. 344 U.S. 280, 73 S.Ct. 252, 97 L.Ed. 319 (1952). In view of the allegations in the Complaint regarding the local benefits derived by HRC from its unfair competition, it is clear that Plaintiff can maintain its claim for unfair competition under the

---

[3] While Defendants claim that the reasoning behind this opinion is "suspect," the conclusion reached by the Court in the General Motors case is consistent cases within this Circuit which have arrived at similar determinations. See Davidoff Extension, S.A. 1983 WL 203 at *3-4; Laboratorios Roldan, C. Por A., 902 F.Supp at 1668-69; Benard Industries, Inc. 38 U.S.P.Q.2d at 1426, 1996 WL 218617 at *5-6.

Lanham Act and the Paris Convention.[4] See also Maison Lazard v. Manfra, Tordella & Brooks, Inc., 585 F.Supp 1286, 1289 (S.D.N.Y. 1984)(French plaintiff may invoke protections of the Lanham Act and the Paris Convention for acts of unfair competition which occurred overseas).

> B. Defendants' Alternative Motion to Stay Should Also be Denied
>
>> 1. Defendants Fail To Demonstrate Similarity of Parties and Claims Between The Instant Action, and the Pending Lebanese Actions

In requesting that this Court stay these proceedings, Defendants erroneously presume that this lawsuit involves a claim for trademark infringement – it does not. As explained above, Plaintiff's principal claim is that HRC engaged in unfair competition by authorizing, encouraging and condoning a series of acts and conduct in an attempt to force Plaintiff out of business. Complaint at ¶38. In deciding whether to stay these proceedings, this Court must first determine whether, as a threshold matter, this action involves similar claims and parties as a concurrent action pending in a foreign country. Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1222 (11th Cir. 1999). Both the parties and claims asserted in the instant action differ from the pending Lebanese Actions, even as described by Defendants.

The First, Second and Third Lebanese Actions identified by Defendants are all civil lawsuits brought in Beirut, Lebanon by HRL (a non-party to this lawsuit) against Nouhad Khalil (another non-party to this lawsuit). Defendants' Motion to Stay at p. 5. Each of these Lebanese

---

[4] In the Davidoff case, for example, the Court held that "[t]he Paris Convention is self-executing and, by virtue of Article VI of the U.S. Constitution, a part of the law to be enforced by the courts." Davidoff Extension, 1983 WL 203, *3 (citations omitted). In Laboratorios Roldan, again, the Southern District of Florida held that because a Dominican company was entitled to protection from unfair competition under the Lanham Act and the Paris Convention, it was entitled to maintain a federal claim against an American company for trademark and trade dress infringement, and misrepresentation. 902 F.Supp at 1568.

10

Actions involve trademark infringement and unfair competition disputes under Lebanese law. Defendants' Motion to Stay at pp. 5-6. According to Defendants, none of these Lebanese Actions involve any claims by or against the Defendants in this case, HRC and HRCC. Most importantly, none of the Lebanese Civil Actions have reached a judgment. Defendants' Motion to Stay at pp. 5 and 6. Accordingly, it is evident by Defendants' own admissions that the parties to this lawsuit and the parties to the Lebanese Civil Actions are different.

The claims raised in this lawsuit are also different from those alleged by HRL against Mr. Khalil in the Lebanese Actions. Specifically, as explained above, the gist of this lawsuit involves only HRC's involvement in a pattern of unfair competition against IC in order to force the latter to close its Hard Rock Café restaurant/bar in Lebanon. Complaint ¶26, 34-40. This pattern of unfair competition includes, among other things, directing the filing of criminal and civil actions by HRC's affiliate against Mr. Khalil. Complaint at ¶ 28. In sharp contrast, the civil lawsuits pending in Lebanon involve interpretation of Lebanese laws regarding trademark infringement between two parties that are not involved in the instant lawsuit. Defendants' Motion to Stay at pp. 5-7.

Since neither the parties nor the claims asserted through the instant lawsuit are the same as those present in the concurrent civil litigation in the Lebanese Courts, Defendants have failed to establish the threshold prerequisite in determining whether to stay this lawsuit. Defendants' Motion to Stay should be denied on this basis alone.

    2.  Application of the International Abstention Doctrine Further Militates <u>Against Granting Defendants' Alternative Motion to Stay this Litigation</u>

Even assuming, *arguendo*, that the parties and claims in this lawsuit are substantially

11

similar to those in the Three Lebanese Actions identified by Defendants in their moving papers – which they are not – Defendants must nevertheless establish the factors considered by courts within the Eleventh Circuit in determining whether to exercise jurisdiction given the existence of a concurrent international dispute. Specifically, the factors are the following: "(1) a proper level of respect for the acts of our fellow sovereign nations – a rather vague concept referred to in American jurisprudence as international comity; (2) fairness to litigants; and (3) efficient use of scarce judicial resources." Turner Entertainment v. Degeto Film GmbH, 25 F.3d 1512, 1518 (11th Cir. 1994). Some courts, however, have included an additional consideration which is of particular significance in this case; namely, that federal courts should assume jurisdiction in parallel proceedings until a judgment is reached in one court. See Turner Entertainment, 25 F.3d at 1518, n. 9 (*citing* Laker Airways Ltd. v. Sabena, Belgian World Airlines, 731 F.2d 909, 926-27 (D.C. Cir. 1984) and Lida of Thurn & Taxis v. Thompson, 305 U.S. 456, 466, 59 S.Ct. 275, 280 (1939)). An analysis of these factors further demonstrates that Defendants' Motion to Stay should be denied by this Court.

First, Defendants openly admit that a judgment has not been reached in any of the pending civil lawsuits in Lebanon which involve non-parties to this lawsuit. Defendants' Motion to Stay at pp. 5-7. Based upon this undisputed finding, this Court should exercise jurisdiction over these proceedings. See Laker Airways Ltd., 731 F.2d at 926-27; cf. Turner Entertainment, 25 F.3d at 1522-23 (reversing lower court and staying litigation in view of entry of judgment in Germany). Even if a judgment is entered in any of the Lebanese Actions, they will have minimal effect on these proceedings since this lawsuit involves different parties than those currently involved in the Lebanese Actions.

Principles of international comity do not require that this Court abstain from exercising jurisdiction over the instant lawsuit. As explained by the Eleventh Circuit in Turner, international comity refers to recognition of **judgments rendered in a foreign nation**. 25 F.3d at 1519. As Defendants admit, no judgment has been entered in any of the pending Lebanese Civil Actions. Also, Plaintiff does not contest that a Lebanese Court is competent to decide issues involving trademark infringement under Lebanese laws; except, this is not the issue presented by the litigation. See Complaint at ¶34-40. However, it is evident that Plaintiff could not obtain adequate relief if it prosecuted its claims in this lawsuit as counterclaims in Lebanon. Indeed, Fady Jamaleddine, a Lebanese attorney attests that a Lebanese Court does not have jurisdiction to decide the fate of franchisees of foreign companies, like HRC, as is the case here. See Declaration fo Fady Jamaleddine in Support of Plaintiff's Motion for Preliminary Injunction, at ¶6 ("Fady Dec.").[5] Likewise, Plaintiff would be unable to seek the remedy of preliminary injunctive relief in Lebanon. Id. at ¶5.

Defendants' suggestion that Plaintiff is attempting to "have it both ways," is also plainly false. The breach of contract claim asserted by Plaintiff is against HRCC, not HRC. See Defendants' Motion to Stay at p. 9; Complaint at ¶¶46-53. Plaintiff does not claim to have a contractual relationship with HRC. Therefore, Plaintiff's allegations in the Complaint are entirely consistent.

Contrary to Defendants' contention, Plaintiff does not "base" its lawsuit upon the decision by a Lebanese Appellate Court. See Defendants' Motion to Stay at p. 7. Plaintiff's principal

---

[5] Plaintiff did not attach Mr. Jamaleddine's declaration to the Complaint, but rather as an exhibit in support of Plaintiff's Motion for Preliminary Injunction. Defendants have also erred in this respect.

claim for unfair competition against Defendant, HRC, is grounded upon numerous actions taken by HRC from Orlando, which unfairly allowed HRC to receive local benefits such as a percentage of royalties, advertising, and sales of souvenir merchandise from its clandestine Lebanese franchisee. Complaint at ¶39. Plaintiff's allegations regarding the decision by the Lebanese Appellate Court were made for the purpose of demonstrating one of the acts taken against Mr. Khalil by HRC, or at its direction and control, in furtherance of the pattern of unfair competition alleged in the Complaint. Consequently, it appears that the principle of international comity would not be disturbed by this Court if it chose to exercise jurisdiction over the instant dispute.

The fairness-related concerns raised by Defendants also do not justify a stay of this action in deference to the Lebanese Civil Actions. While it is undisputed that the Lebanese Civil Actions were filed before the instant action, as explained above, the instant action involves different parties and markedly different claims for relief. The convenience of this forum versus Lebanon is a moot issue. Plaintiff, a Lebanese corporation, has submitted to this jurisdiction and is aware of the expense and difficulties it will be required to incur to prosecute its claims against HRC, a local corporation. If there is any inconvenience, it will befall upon Plaintiff, not HRC. The distance between Lebanon and this forum is of little consequence within the context of this analysis, since modern methods of transportation and communication have significantly ameliorated this apparent burden. See McGee v. International Life Ins. Co., 355 U.S. 220, 223, 78 S.Ct. 199, 201 (1957). In contrast to Defendants' allegation, the risk of inconsistent judgments does not play a factor in this case, since this lawsuit involves different parties and claims than those involved in the Lebanese Actions. If this Court chose to abstain, however, Plaintiff would be prejudiced because it would be unable to pursue claims in this litigation which are not otherwise

available in Lebanon. Fady Dec. at ¶¶5-6.

Lastly, this Court's exercise of jurisdiction over this dispute will not lead to a waste of judicial resources. As indicated above, the issue of relative convenience of the federal forum versus the Lebanese courts is a non-issue given Plaintiff's willingness to litigate thousands of miles from its principal place of business. Likewise, piecemeal litigation will be a non-issue if this matter proceeds, given that different parties are involved in this lawsuit versus the Lebanese Actions. Regardless of whether any of the Lebanese courts render a prompt disposition, it will have little or no effect upon the claims by Plaintiff against HRC. Accordingly, this Court will not engage in a waste of judicial resources should it exercise jurisdiction over this lawsuit.

Given that Defendants cannot establish the factors necessary for this Court to invoke the international abstention doctrine, Defendants' alternative motion to stay should also be denied by this Court.

15

## III.   CONCLUSION

For the foregoing reasons and authority, Plaintiff, INTERNATIONAL CAFÉ, respectfully requests that this Court deny Defendants' Motion to Dismiss, or in the Alternative, Motion to Stay, and enter any other Order deemed just and proper.

Dated January 7, 2000                    Respectfully submitted,

                                       ZARCO & PARDO, P.A.
                                       NationsBank Tower
                                       100 S.E. 2nd Street,
                                       27th Floor
                                       Miami, Florida 33131
                                       Telephone No. (305) 374-5418
                                       Facsimile No. (305) 374-5428

                                       By: _____
                                       ROBERT ZARCO
                                       Florida Bar No. 502138
                                       **Trial Counsel**
                                       ROBERT M. EINHORN
                                       Florida Bar No. 858188
                                       OMAR J. ARCIA
                                       Florida Bar No. 057223

                                       Counsel for Plaintiff,
                                       INTERNATIONAL CAFE, S.A.L.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via First Class U.S. Mail to **John Wilson, Esq. and Joseph Beatty, Esq.**, Foley & Lardner, 111 North Orange Avenue, Suite 1800, Orlando, Florida 32801-2386 on January 10th, 1999.

_____
OMAR J. ARCIA

ZARCO & PARDO, P.A. ATTORNEYS AT LAW, INTERNATIONAL PLACE, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418